# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 09-08171-JW |
| | Chapter 13 |
| Donald Eugene Crawford and LaShawn Washington Crawford, | **ORDER** |
| Debtor(s). | |

This matter is before the Court on the Motion to Compel Release of Lien filed by Donald Eugene Crawford and LaShawn Washington Crawford ("Debtors"). Prestige Financial Services, Inc. ("Prestige") objected to the Motion to Compel, and a hearing was held. In accordance with Fed. R. Civ. P. 52, which is made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[1]

## FINDINGS OF FACT

1. On January 22, 2008, Debtors received a discharge in prior Chapter 7 case, C/A No. 07-05414-dd, and their case was closed.

2. On April 26, 2008, Debtors purchased a 2008 Ford Focus ("Vehicle"), and financed the purchase with a loan from Prestige. Prestige perfected its security interest in the Vehicle by noting its lien on the Vehicle's certificate of title.

3. On October 30, 2009, Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Due to Debtors' previous discharge within the four year period prior to the filing of this case, Debtors are ineligible to receive a Chapter 13 discharge in this case.

---

[1] To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such; and to the extent any conclusions of law constitute findings of fact, they are likewise so adopted.

4. On November 4, 2009, Prestige filed a proof of claim, asserting a claim in the amount of $16,598.67, secured by the Vehicle.

5. Simultaneously with the petition, Debtors filed their Chapter 13 plan, which was subsequently amended on March 12, 2010. Each plan provided identical treatment of Prestige's claim, which was specifically identified in the following provision in Section IV.B.5: "The trustee shall pay Prestige Financial Services the sum of $337.00 or more per month, along with 5.25% interest until the secured claim is paid in full." Prestige received notice of the plans, but did not file an objection to either plan.

6. On March 19, 2010, the Court confirmed Debtors' Chapter 13 plan. The confirmation order was not appealed and is a final order of the Court. In addition to the provision providing specific treatment of Prestige's claim, the confirmed plan included the following pertinent provision in Section IV.B.1 regarding secured claims:

> 1. <u>General Provisions</u>: The terms of the debtor's pre-petition agreement with a secured creditor shall continue to apply except as modified by this plan, the order confirming the plan, or other order of the Court. Holders of secured claims shall retain liens to the extent provided by 11 U.S.C. § 1325(a)(5)(B)(i). Secured creditors paid the full secured claim provided for by this plan shall timely satisfy any liens in the manner required by applicable law or order of this Court.

This section is a standard part of the form plan required by the Court and is applicable in all Chapter 13 cases in this District.

7. Debtors successfully completed their plan payments pursuant to the confirmation order and confirmed plan in this case, and on December 5, 2014, the Chapter 13 Trustee filed the Report of Trustee of Completion of Plan Payments by Debtors, wherein the Trustee certified that all plan payments were made pursuant to the confirmed plan. According to the Trustee, Prestige received distributions totaling the full

2

amount of its claim, $16,598.67, plus interest at the plan rate of 5.25% in the amount of $4,357.15.

8. After receiving notice of the report of their plan completion from the Trustee, Debtors contacted Prestige to request the satisfaction of its lien on the Vehicle. Due to its receipt of full payment, the Trustee also contacted Prestige to request the satisfaction of the lien. Prestige refused to satisfy the lien, asserting that Debtors still owed Prestige $10,966.17, the difference between the amount of interest owed under the contract rate of 17.25% and the amount of interest paid under the plan.

9. On March 28, 2015, Debtors filed the Motion to Compel Release of Lien.

10. Prestige filed a timely objection to the Motion to Compel Release of Lien on April 14, 2015.

## CONCLUSIONS OF LAW

Debtors assert that the Court should issue an order compelling Prestige to release its lien because (1) Debtors have paid in full Prestige's secured claim in the amount of $16,598.67 at a modified interest rate provided for by the confirmed plan pursuant to 11 U.S.C. § 1322(b)(2)[2]; (2) the plan expressly requires Prestige to timely satisfy its lien upon payment in full of its secured claim; and (3) Prestige is bound by the terms of the plan pursuant to § 1327 since it had notice of the plan and failed to object to confirmation. In response, Prestige contends that, as a matter of law, according to § 1325(a)(5)(B)(i), it does not have to release its lien until the earlier of the payment of the underlying debt as determined under non-bankruptcy law (i.e., the contract) or the discharge of Debtors pursuant to § 1328, and also that the terms of the plan itself provide for it to retain its lien until its full contract debt is paid to the extent provided by

---

[2] Further references to the Bankruptcy Code shall be by section number only.

3

§ 1325(a)(5)(B)(i). Since Debtors are ineligible for a discharge, Prestige argues the remaining balance due under the contract, $10,966.17[3], remains secured by the lien until paid in full, and thus the Motion to Compel should be denied. For the following reasons, the Court concludes that Debtors' Motion to Compel should be granted:

I. *Prestige's rights were permanently modified pursuant to 11 U.S.C. § 1322(b)(2) upon confirmation.*

Section 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." With regard to creditors holding claims secured by property other than a debtor's principal residence, permissible modifications under this section may include changes to the terms of the contract, such as the amount of the monthly payments, the number and timing of payments, and the interest rate. As long as the requirements for confirmation set forth in § 1325(a)(5) are met, "nothing in § 1325(a)(5) prevents a debtor from modifying payment terms or interest rates under section 1322(b)(2)" for creditors whose claims are secured by property other than a debtor's principal residence. Even a debtor who is not eligible for a discharge may permanently modify a loan in a chapter 13 plan.[4] In re Bolden, No. 12-14979, 2013 WL 3897048 at *4 (E.D. Mich. Jul. 29, 2013) (citing In re Hopkins, 371 B.R. 324, 327 (N.D.Ill. 2007)).

---

[3] This sum represents the difference between the total amount due plus interest at the contract of 17.95% and the total amount due plus interest at the plan rate of 5.25%.

[4] Section 1322(b)(2) also allows modification of the interest rate and payment terms of loans to creditors who financed the purchase of a vehicle for the personal use of the debtor within 910 days of the bankruptcy, a status Prestige appears to now claim in this case, despite the hanging paragraph of § 1325(a)* barring the bifurcation of such a claim. In re Bolden, 2013 WL 3897048 at *6; In re Johnson, 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006) ("[A] plan may still modify the term of the loan and the interest rate, even if bifurcation is not allowed.")

4

In this case, the plan provided for the full payment of Prestige's allowed claim as modified by reducing the interest rate from 17.95% to 5.25%, this Court's presumptively reasonable rate under SC LBR 3015-6(a).[5] Under SC LBR 3015-6(c), Prestige had an opportunity and specific procedure to object to the interest rate proposed in Debtors' plan, but failed to do so. Prestige admits that Debtors may modify the interest rate payable on its secured claim through the plan even though they are ineligible for a discharge, but argues that the modification is not permanent and has no post-bankruptcy effect, citing In re Harrison, 394 B.R. 879 (Bankr. N.D.Ill. 2008), because the requirements of § 1325(a)(5)(B)(i) cannot be met in a case where a debtor is ineligible to receive a discharge. However, the Harrison case is distinguishable because, unlike this case, the Harrison court was considering whether creditor's claim was being properly "crammed down" under § 1325(a)(5)(B)(i) upon the secured creditor's objection to confirmation, i.e., no acceptance of the plan under § 1325(a)(5)(A). Because § 1325(a)(5)(B)(i), which was applicable in that case, requires the plan to provide for the secured creditor's retention of the lien until the earlier of the payment of the underlying debt determined under nonbankruptcy law or discharge, and the debtor was ineligible for discharge, the Harrison court concluded that the modification of the interest rate payable on the creditor's loan would have no post-bankruptcy effect and any remaining amount due under the contract would remain due and continue to be secured by the collateral after the debtor exited bankruptcy. Id. at 883. As discussed below, § 1325(a)(5)(B)(i) is not applicable in this case due to Debtors' compliance with § 1325(a)(5)(A). Therefore,

---

[5] See SC LBR 3015-6(a) ("If applied to a secured claim in a chapter 13 plan, there will be a rebuttable presumption that the Periodic Interest Rate [set by the Court]—for plan confirmation purposes—is reasonable.")

since Prestige has been paid the full amount of its claim plus interest at the modified rate, the confirmed plan requires Prestige to satisfy its lien.

II.  *Prestige accepted the plan under § 1325(a)(5)(A), thus § 1325(a)(5)(B) is inapplicable.*

In order to achieve confirmation in a Chapter 13 case, a plan proposing to modify a secured creditor's claim pursuant to § 1322(b)(2) must meet the requirements of § 1325(a). See In re Martin, 444 B.R. 538, 544-45 (Bankr. M.D.N.C. 2011). With respect to an allowed secured claim provided for by a plan, such as the claim held by Prestige in this case, the plan may be confirmed if one of three alternative events occur: (1) the holder of such claim accepts the plan under § 1325(a)(5)(A); (2) a non-accepting holder of such claim retains its lien until the earlier of payment of the underlying debt or the debtor's discharge under § 1325(a)(5)(B);[6] or (3) the debtor surrenders the property securing such claim to the holder under § 1325(a)(5)(C). For the following reasons, the Court finds that § 1325(a)(5)(B) is not applicable in this case because Prestige's failure to object constitutes acceptance of the plan under § 1325(a)(5)(A).

---

[6] To satisfy § 1325(a)(5)(B), the plan must meet three requirements:
    (i) The plan provides that—
        (I) the holder of such claim retain the lien securing such claim until the earlier of—
        (aa) the payment of the underlying debt determined under nonbankruptcy law; or
        (bb) discharge under section 1328; and
        (II) if the case is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
    (iii) if—
        (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
        (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan….

Prestige admits that it had notice of its treatment under the plan and failed to object to confirmation or challenge the confirmed plan after confirmation. Many courts, including this Court, have held that a creditor's silence can be interpreted as acceptance of its treatment under the plan. See In re Flynn, 402 B.R. 437 (1st Cir. BAP 2009) ("The courts that have considered the question have overwhelmingly concluded that a secured creditor's lack of objection may constitute acceptance of the plan for purposes of § 1325(a)(5)(A)."); In re Jones, 530 F.3d 1284, 1291 (10th Cir. 2008); In re Szostek, 886 F.2d 1405, 1413 (3rd Cir. 1989); In re Rosa, 495 B.R. 522, 524 (Bankr. D. Haw. 2013); In re Tonioli, 359 B.R. 814, 817-18 (Bankr. D.Utah. 2007); In re Davis, 411 B.R. 225 (Bankr. D. Md. 2008) (finding that the creditor's failure to object to the plan constitutes acceptance of its treatment under that plan); In re Schultz, 363 B.R. 902, 907 (Bankr. E.D. Wis. 2007) (same); In re Turner, C/A No. 10-03358-JW, slip op. (Bankr. D.S.C. Sept. 21, 2010) (same); In re Dangerfield, C/A No. 04-13686, slip op. (Bankr. D.S.C. Aug. 23, 2005) (same); In re Thomas, No. 96-79381, 1997 WL 33343973 (Bankr. D.S.C. Jul. 11, 1997) (noting that most courts that have considered the issue have held that a secured creditor's failure to object to a chapter 13 plan constitutes acceptance of that plan under § 1325(a)(5)(A)); see also Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4th ed., § 445.1, Sec. Rev. Oct. 20, 2010, www.Ch13online.com (noting that there is a long line of cases acknowledging that acceptance by silence binds lienholders to confirmed Chapter 13 plans that provide for payment of the allowed secured claim and that the fundamental issue is notice: whether the creditor had adequate information about the proposed treatment in time to object to confirmation).

The plan in this case clearly and specifically described Debtors' treatment of Prestige's claim in Section IV.B.5, stating that "[t]he trustee shall pay Prestige Financial Services the sum of $337.00 or more per month, along with 5.25% interest *until the secured claim is paid in full*," and also boldly provides that "[f]ailure to object may constitute an implied acceptance of and consent to the relief requested in this document." Since Prestige was properly served with notice of the plan, its failure to object to its treatment under that plan constitutes acceptance of the plan pursuant § 1325(a)(5)(A). See Flynn, 402 B.R. at 444 (finding that implied acceptance where the creditor has received adequate notice of the plan and failed to respond); Turner, C/A No. 10-03358-JW, slip op. at 3 (same); Dangerfield, C/A No. 04-13686, slip op. at 3 (same). The Court finds recent support for the determination that failure to object equals consent (acceptance) in the Supreme Court case of Wellness International Network, Ltd. v. Sharif. See No. 13-935, 2015 WL 2456619 (May 26, 2015) (finding that litigants may waive their rights to object (and thus implicitly consent) to adjudication by the bankruptcy court when they are made aware of the need for consent and their right to refuse it and fail to object).

In light of Prestige's acceptance of the plan under § 1325(a)(5)(A), Prestige's argument that its claim was governed by the cram down provision of § 1325(a)(5)(B) must necessarily fail. See In re Bolden, 2013 WL 3897048 at *1 (finding that a creditor who did not object to confirmation could not rely upon the cram down provision set forth in § 1325(a)(5)(B)(i)). Section 1325(a)(5)(B)(i) would only apply if the modifications to the loan had been forced upon Prestige over its objection. "Under the cram down option [of § 1325(a)(5)(B)(i)], the debtor is permitted to keep the property *over the objection of*

8

*the creditor*" under certain conditions. See In re Martin, 444 B.R at 546 (emphasis added). As discussed above, no objection was raised by Prestige and thus its treatment (in this instance, payment in full with interest at the presumptively reasonable rate set by SC LBR 3015-6(a)) was accepted by and not forced upon Prestige, so the requirements of § 1325(a) were met.

Even if the Court were to consider Prestige's argument that Debtors could not meet the requirements under § 1325(a)(5)(B) because Debtors are ineligible for discharge, it would appear to conflict with rulings within the Fourth Circuit. In Branigan v. Bateman (In re Bateman), the Fourth Circuit held that a Chapter 13 debtor need not be eligible for a discharge in order to take advantage of the protections afforded by Chapter 13. 515 F.3d. 272, 283 (4th Cir. 2008)).[7] While the Fourth Circuit has not addressed the specific issue raised by Prestige, it addressed an analogous issue in In re Davis, 716 F.3d 331 (4th Cir. 2013) and rejected the trustee's argument that § 1325(a)(5)(B)(i) would allow a valueless junior lien against the debtor's residence to survive until paid in full where no discharge was possible. In Davis, the Fourth Circuit recognized that § 1322(b)(2) allows modification of rights of secured claims in Chapter 20 cases and found that upon completion of the plan, its provisions—including any orders stripping off valueless liens—become permanent, even in the absence of a discharge. Id. at 338. Based on the analysis set forth in the Bateman and Davis opinions, it appears that the Fourth Circuit would similarly conclude that the absence of a discharge is not

---

[7] In Bateman, the Fourth Circuit recognized that a debtor might pursue a Chapter 13 case when he was not eligible for discharge to "reorganize one's financial life and pay off debts," by curing a mortgage, dealing with other secured debts or ***simply paying debts under a plan*** with the protection of the automatic stay. 515 F.3d at 283.

determinative under the circumstances in this case where the creditor's modified claim has been paid in full.

III. *The terms of the plan itself do not make § 1325(a)(5)(B)(i) applicable in this case.*

Prestige argues that one sentence in Section IV.B.1 General Provisions of the plan, which states that "Holders of secured claims shall retain liens to the extent provided by § 1325(a)(5)(B)(i)," makes that statute applicable to its claim in this case. The Court disagrees. First, according to the plain meaning of its words, that provision only addresses the retention of a lien **if** § 1325(a)(5)(B)(i) is applicable as a matter of law. The phrase "to the extent" is commonly interpreted to be synonymous with the terms "if", "to the degree that" or "in so far as." See Kenneth A. Adams, A Manual of Style for Contract Drafting 397 (3rd ed. 2006) (stating that the phrase "to the extent" is used when the degree to which a provision applies depends on some variable, and the phrase is often used where "if" would be more appropriate). Next, Prestige's argument would have the Court ignore the preceding and subsequent sentence in that same section. The first sentence in Section IV.B.I contemplates the possibility of lien modification by the plan or confirmation order, as was done in Section IV.B.5 of Debtors' plan. The subsequent sentence expressly requires timely satisfaction of a lien if paid in full, as provided in Section IV.B.5.[8] If Prestige's interpretation of that single sentence is accepted,[9] it would make § 1325(a)(5)(B)(i) applicable to each and every secured claim in every plan in this District, and would therefore effectively supersede other provisions of the plan and

---

[8] Under applicable non-bankruptcy law, Prestige would also be required to satisfy its lien after payment of a debt in full. See S.C. Code Ann. 56-19-680 (providing that upon satisfaction of a security interest in a vehicle, the lienholder has a duty to execute a release of its lien on the certificate of title within 10 days after demand and upon failure to do so, the lienholder shall be guilty of a misdemeanor)

[9] Since the implementation of the form Chapter 13 plan, the undersigned is unaware that the arguments raised by Prestige regarding interpretation of the General Provision in Section IV.B.5 regarding lien retention have ever been raised before, successfully or unsuccessfully.

10

various Chapter 13 statutes, including §§ 1322, 506, and other sections—an effect contrary to the Bankruptcy Code and clearly not intended by the Court as the drafters of the required form plan.[10] Moreover, to hold otherwise would effectively nullify the express treatment of Prestige's claim set forth in Section IV.B.5, which specifically provides for full payment during the term of the plan. "In construing a contract, each and every part of it must be taken into account and, if possible, given effect. One part of the contract should not be interpreted so as to annul another provision of the same contract…. Any inconsistency between a general clause and a specific clause must be resolved in favor of the specific." Richland-Lexington Airport Dist. v. American Airlines, Inc., 306 F.Supp.2d 548 (D.S.C. 2002). Therefore, the Court concludes that the specific provision regarding the treatment of Prestige's secured claim controls and the General Provision in Section IV.B.1 of the plan regarding § 1325(a)(5)(B)(i) would not make that statute applicable as a matter of law to allow Prestige to retain its lien after completion of the plan and receipt of full payment.[11]

IV. *Prestige is bound by the confirmed plan pursuant to 11 U.S.C. § 1327.*

As previously stated, the plan includes the following pertinent provision:

1. <u>General Provisions</u>: The terms of the debtor's pre-petition agreement with a secured creditor shall continue to apply *except as modified by this plan, the order confirming the plan*, or other order of the Court…. *Secured creditors paid the full secured claim provided for by this plan shall timely satisfy any liens in the manner required by applicable law or order of this Court*.

(emphasis added).

---

[10] This general provision has been part of the form plan adopted by this Court since 2009, and was drafted by the judges of the Court with the assistance of a Bar committee composed of attorneys for creditors, debtors and the Chapter 13 Trustees.

[11] No evidence was presented demonstrating that Prestige made an informed decision to not object to confirmation, relying upon its interpretation of this general provision to preserve its lien after the plan's completion.

11

This provision compliments the specific treatment provided to Prestige in Section IV.B.5. In that Section, Prestige's pre-petition agreement with Debtors was modified by the confirmed plan, as permitted by 11 U.S.C. § 1322(b), which binds Prestige to the interest rate and payment amount provided under the plan. See In re Underhill, 425 B.R. 614, 618 (Bankr. D. Utah 2010) ("'Unless expressly preserved in the plan or the order confirming the plan, all pre-confirmation agreements and orders concerning the treatment of a claim are superseded by the terms and provisions of the confirmed plan.'") (quoting In re Diviney, 225 B.R. 762, 771 (10th Cir. BAP 1998)). Prestige received the full amount it sought in its proof of claim without bifurcation or valuation of its security interest and without discharge of any debt owed to it by Debtors. The plan unambiguously required Prestige to timely satisfy its lien once it is paid its full secured claim, as was done in this case. This requirement was not conditioned upon Debtors' receipt of a discharge. Despite notice, Prestige did not raise any issue regarding its treatment under the plan or to the requirement that it satisfy its lien once paid in full pursuant to the plan. The plan did not indicate improper treatment of Prestige's claim, particularly since it proposed to pay the full amount of the secured claim set forth in Prestige's timely filed proof of claim with interest. Under § 1327(a), "[t]he provisions of a confirmed plan bind the debtor and each creditor,… whether or not such creditor has objected to, has accepted, or has rejected the plan." "When a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate and thus the party is bound to the confirmation order." In re Randall, C/A No. 13-05672-JW, slip op. (Bankr. D.S.C. Nov. 5, 2013) (citing United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260,

272 (2010); Coulter v. Aplin (In re Coulter), 305 B.R. 748, 756 (Bankr. D.S.C. 2003)); In re Davis, C/A No. 10-02249-JW, 2010 WL 5173187, at *2 (Bankr. D.S.C. Oct. 12, 2010) (holding that creditor was "bound by res judicata and [§] 1327 to accept its treatment under the confirmed Plan… since it failed to object to confirmation, despite having been provided notice of the Plan and confirmation hearing, and failed to appeal the confirmation order"). Espinosa makes clear that a non-objecting creditor is bound to treatment under a plan and instructs the Court to enforce it. See 559 U.S. at 272. For these reasons, Prestige is bound to its treatment under the plan and was obligated to timely satisfy its lien as required by the plan.

V. *Attorney's Fees*

Debtors and Prestige each assert that they are entitled to an award of attorney's fees regarding this matter in the event judgment is rendered in their favor. In light of the Court's conclusion that Debtors' Motion to Compel Release of Lien should be granted, Prestige's request for attorney's fees is denied. Counsel for Debtors has requested $7,325.00 in fees, which were necessarily incurred to enforce the plan, based upon Prestige's failure to comply with the provisions of the confirmed plan after demand by both Debtors and the Trustee.[12] To excuse any assessment of fees, Prestige argues that it provided case law in support of its refusal to satisfy the lien in advance of the Motion to Debtors' counsel. However, a review of the applicable case law instead supports Debtors' position. Therefore, the Debtors acted reasonably in filing the Motion.

According to the confirmation order entered on March 19, 2010 regarding Debtors' plan, Prestige was clearly required to timely satisfy its lien upon completion of

---

[12] If in doubt, Prestige could have petitioned the Court for clarification or direction regarding the plan, but instead forced Debtors to enlist counsel to file the necessary pleadings before the Court.

13

payments provided for in Section IV.B.5.  According to the evidence, Prestige willfully declined to satisfy its lien and comply with the order.  The Court finds Prestige acted unreasonably and in violation of the confirmation order and plan in taking the position that it was not required to satisfy its lien after accepting full payment of its claim over a five-year period with interest in accordance with the plan without any previous objection or raising an issue regarding the payment amount. [13]  See In re Dendy, 396 B.R. 171, 180 (Bankr. D.S.C. 2008)[14] ("A violation of the confirmation order is an act of contempt, which like the discharge injunction, may be remedied by this Court's authority under 11 U.S.C. § 105(a).") (citing In re Walters, 868 F.2d 665, 668 (4th Cir. 1989) (discussing § 105(a) as the appropriate authority to find a party in civil contempt for violating the orders of the bankruptcy court)).  Debtors reasonably relied on Prestige's silence and actions by continuing to perform in accordance with the plan over the five-year period with the expectation that Prestige's lien would be satisfied when those payments were completed.  Prestige's actions are thus, in effect, an impermissible collateral attack on the confirmation order and plan to which it is bound.

Counsel has filed an Affidavit of Attorney's Fees to support Debtors' request for attorney's fees, and Prestige has not challenged the reasonableness of the amount requested. The Court finds the fees reasonable.  This Court has previously recognized that § 105(a), which allows the court to take any action or make any determination necessary or appropriate to enforce or implement court orders, and its inherent authority

---

[13] The Court observes that Prestige's failure to satisfy its lien upon payment in full also violates applicable state law.  See S.C. Code Ann. §56-19-680.

[14] In Dendy, the Court concluded that a creditor did not violate the confirmation order by merely failing to satisfy its void lien, however, unlike the plan in this case, the plan in Dendy did not contain the provision that "[s]ecured creditors paid the full secured claim provided for by this plan shall timely satisfy any liens in the manner required by applicable law or order of this Court." See 396 B.R. at 181.

14

authorize the Court to award attorney's fees when holding a party in contempt for failure to comply with a prior confirmation order.[15] In re Ford, 522 B.R. 842, 848-49 (Bankr. D.S.C. 2015) (requiring a creditor to pay debtor's attorney's fees where the creditor's conduct constituted a violation of the confirmation order); In re Brown, 270 B.R. 43, 52 (Bankr. D.S.C. 2001) (ordering the payment of attorney's fees and costs pursuant to § 105 and its inherent authority to enforce its rules of practice). In this case, Prestige failed to comply with a requirement of the confirmed plan despite notification from both Debtors and the Trustee that it was obligated to satisfy its lien.  The Court believes that its authority to enforce its orders, including a confirmation order, under § 105(a) must necessarily include the ability to award fees to a debtor who is forced to bring an action, and thus incur attorney's fees, to compel a creditor's compliance with the binding plan and the order confirming the plan.[16] Therefore, under the circumstances of this case, the Court finds Prestige's actions to be unreasonable and in bad faith and therefore, awards attorney's fees to Debtors in the amount of $7,325.00.  See Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (stating that a federal court may assess attorney's fees as a sanction for the "willful disobedience of a court order" and where a party has acted in bad faith).

## CONCLUSION

Based on the foregoing, it is hereby ORDERED that Debtors' Motion to Compel Release of Lien is granted and Prestige is ordered to satisfy and release its lien on the title

---

[15] The Court also relies upon the following authority to support the award in this case: In re Walters, 868 F.2d 665, 669 (4th Cir. 1989) (concluding that a bankruptcy court's order holding a party in contempt for failure to comply with its previous order was appropriate in carrying out the administration of the estate and was thus authorized by § 105(a)) and In re Weiss, 111 F.3d 1159 (4th Cir. 1977) (recognizing the Court's inherent authority to regulate litigants before it and to address improper conduct).

[16] The Court notes that the Debtors' attorney's fees in filing and prosecuting this motion are nearly equivalent to the amount Prestige claims remains outstanding on its loan.

to Debtors' 2008 Ford Focus and pay $7,325.00 to Debtors to be applied to the attorneys'

fees and costs incurred in filing and prosecuting the Motion within 10 days of the entry of

this Order.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/08/2015**



Entered: 06/08/2015

US Bankruptcy Judge
District of South Carolina